1  Scott E. Davis
   State Bar No. 016160
2  SCOTT E. DAVIS, P.C.
   20827 N. Cave Creek Road, Suite 101
3  Phoenix, AZ 85024

4  Telephone:  (602) 482-4300
   Facsimile:   (602) 569-9720
5  email: davis@scottdavispc.com

6  *Attorney for Plaintiff Staci Skabelund*

7

                 **UNITED STATES DISTRICT COURT**
8
                      **DISTRICT OF ARIZONA**
9

10  Staci Skabelund,                          | Case No.

11          Plaintiff,                        | **COMPLAINT**

12       v.

13  UNUM Life Insurance Company of America;
    Willis North America, Inc., Willis North
14  America Inc. Group Long Term Disability
    Plan,
15

16          Defendants.

17      Now comes the Plaintiff Staci Skabelund (hereinafter referred to as "Plaintiff"), by

18  and through her attorney, Scott E. Davis, and complaining against the Defendants, she

19  states:

20                              *Jurisdiction*

21      1.     Jurisdiction of the Court is based upon the Employee Retirement Income

22  Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f).

23  Those provisions give the district courts jurisdiction to hear civil actions brought to recover

24  employee benefits.  In addition, this action may be brought before this Court pursuant to 28

25

26

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

### Parties

2.      Plaintiff is a resident of Maricopa County, Arizona.

3.      Upon information and belief, Plaintiff's employer Willis North America Inc. (hereinafter referred to as the "Company"), purchased a group disability insurance policy which was fully insured by UNUM Life Insurance Company of America (hereinafter referred to as "UNUM"). The specific UNUM policy is known as group policy 501167 001.

4.      The Company's purpose in subscribing to the UNUM policy was to provide disability insurance for its employees.  Upon information and belief, the UNUM policy may have been included in and part of the Willis North America Inc. Group Long Term Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits.  At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

5.      Upon information and belief, UNUM functioned as the plan and/or claims administrator of the Plan; however, pursuant to the relevant ERISA regulation, the Company or Plan may not have made a proper delegation or properly vested fiduciary authority or power for plan and/or claim administration in UNUM.

6.      Upon information and belief, Plaintiff believes UNUM operated under a financial conflict of interest in her claim due to the fact it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of

benefits; *to wit,* UNUM's conflict existed in that if it found Plaintiff was disabled it was also liable for payment of those benefits.[1]

7.     The Company, Plan and UNUM conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

### *Venue*

8.     Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### *Nature of the Complaint*

9.     Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits she may be entitled to as a result of being found disabled.

10.     After working for the Company as a loyal employee for six (6) years, Plaintiff became disabled due to serious medical conditions and was unable to work in her designated occupation as a Claims Advocate on or about August 1, 2006.  Plaintiff has remained disabled as that term is defined in the relevant policy continuously since that date and has not been able to return to any occupation as a result of her serious medical conditions.

---

[1] "A plan administrator's dual role of both evaluating and paying benefits claims creates the kind of conflict of interest referred to in Firestone. *That conclusion is clear where it is the employer itself that both funds the plan and evaluates the claim*, but a conflict also exists where, as here, the plan administrator is an insurance company. For one thing, the employer's own conflict may extend to its selection of an insurance company to administer its plan." *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (U.S. 2008) (emphasis added).

11.     Following her disability, Plaintiff applied for short term disability benefits, which were awarded to her through January 27, 2007, the maximum duration allowed under the relevant UMUM policy.

12.     Plaintiff thereafter applied for long term disability benefits under the relevant UNUM policy.

13.     The relevant long term disability plan provides the following definition of a covered disability and applies to Plaintiff's claim:

> You are disabled when UNUM determines that:
> - you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and
> - you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.
>
> After 24 months of payments, you are disabled when UNUM determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

14.     The relevant long term disability plan further provides the following limitation of disability benefits (hereinafter referred to "disability benefit limitation provision"):

> Disabilities, due to a sickness or injury which are primarily based on self-reported symptoms, and disabilities due to mental illness...have a limited pay period up to 24 months.

15.     In support of her claim for long term disability benefits Plaintiff submitted to UNUM medical records from her treating physicians supporting her total disability and the fact she met the definition of disability set forth by the relevant UNUM policy.

16.     UNUM notified Plaintiff by letter dated May 8, 2007, that it had approved her claim for long term disability benefits under a reservation of rights through April 27, 2007.

-4-

17.   As part of its review of Plaintiff's claim for long term disability benefits, UNUM obtained a medical review of Plaintiff's records from one of its own consulting physicians, Keith A. Caruso, M.D.

18.   Due to the nature of Dr. Caruso's employment relationships with UNUM, Plaintiff questions the objectivity and impartiality of UNUM and Dr. Caruso to review Plaintiff's claim and provide a full and fair review. Upon information and belief, Plaintiff believes Dr. Caruso may have an incentive to protect his own consulting relationship with UNUM and, possibly, the disability insurance industry in general, by providing medical review reports which selectively review or ignore evidence, such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies such as UNUM and which supported the denial and/or limitation of Plaintiff's claim. Moreover, Plaintiff questions the credentials, independence, impartiality and bias of UNUM's own employee to fully and fairly review her claim and believes Dr. Caruso's opinions are adversarial because of his conflict of interest and the fact he is UNUM employee.

19.   Plaintiff believes UNUM's financial conflict of interest is a motivating factor in why it referred her claim to its own employee for review.  Plaintiff believes Dr. Caruso's review of her claim presents a conflict of interest and is a reason her claim was administered  under the disability benefit limitation provision of the relevant policy and she did not receive a full and fair review pursuant to ERISA, 29 U.S.C. § 2560.503-1.

20.   UNUM and Dr. Caruso's conflicts of interest are evident in his June 25, 2007 Medical Claim Analysis Addendum report.  Dr. Caruso did not examine Plaintiff and his opinion that, from a general medical point of view, Plaintiff's disability was limited under the relevant policy's disability benefit limitation provision, was based entirely on a selective review of the evidence which supported Plaintiff's claim.  Dr. Caruso's review

of Plaintiff's medical records was flawed because it was selective and sought to de-emphasize evidence she submitted which proved she was disabled and her disability was not limited by the policy's disability benefit limitation provision in order to provide a reason for UNUM to justify limiting her claim.

21.   Upon information and belief, UNUM knew if it approved Plaintiff for disability benefits outside of the policy's disability benefit limitation provision, it would be required to continue to pay Plaintiff disability benefits potentially well beyond the two (2) year limitation otherwise provided under the relevant policy.

22.   UNUM notified Plaintiff by letter dated August 1, 2007 that it had approved her claim for long term disability benefits.  The August 1, 2007 letter further notified Plaintiff her claim was approved under the disability benefit limitation provision of the relevant policy, which limits her eligibility to a maximum of twenty-four (24) months, or until January 27, 2009.

23.   As part of its routine review of Plaintiff's continued claim for long term benefits beyond January 27, 2009, UNUM contacted Plaintiff's medical providers in late 2008, requesting a statement from each as to whether Plaintiff could engage in full time employment of any kind.

24.   In response to UNUM's inquiry, one of Plaintiff's treating physicians notified UNUM on October 27, 2008 it was his medical opinion Plaintiff could not engage in sedentary work and was unable to work on a full time basis.  This physician also stated Plaintiff's condition had "worsened."  Another treating physician responded to UNUM's request on October 28, 2008, stating Plaintiff could not engage in sedentary work and was unable to work at all on a full time basis.  An additional treating physician responded to UNUM's request on November 13, 2008, stating Plaintiff could not engage in sedentary work and was unable to work on a full time basis.

25.     UNUM notified Plaintiff by letter dated January 13, 2009 of the change in the definition of disability under the relevant policy effective January 28, 2009.

26.     In support of her claim for long term disability benefits Plaintiff submitted to UNUM medical records from her treating physicians supporting her total disability under the relevant definition of disability effective January 28, 2009 and the fact she met this definition of disability set forth by the relevant UNUM policy.

27.     In support of her claim, Plaintiff submitted medical records from one of her treating physicians, including a December 23, 2008 record, which confirmed her serious medical conditions and inability to work full time.  The same treating physician also responded to a February 5, 2009 inquiry from UNUM, stating that Plaintiff could not work a full time sedentary job due to her serious medical conditions.

28.     In response to UNUM's February 5, 2009 inquiry, another of Plaintiff's treating physicians notified UNUM that Plaintiff could not engage in full time sedentary work due to her serious medical conditions.

29.     As part of its ongoing evaluation of Plaintiff's claim for long term disability benefits, UNUM again obtained a medical review of Plaintiff's claim from two of its own employees, Freeman Broadwell, M.D. and Susan S. Council, M.D.  Plaintiff incorporates by reference her discussion of the conflict of interest and incentive to protect their own consulting relationship as discussed with Dr. Caruso.

30.     UNUM and Dr. Broadwell's conflicts of interest are evident in his March 12, 2009 medical review report.  Dr. Broadwell did not examine Plaintiff and his opinion, from a general medical point of view, Plaintiff was not impaired under the relevant definition of disability effective January 28, 2009, was based entirely on a selective review of the evidence which supported Plaintiff's claim.   Plaintiff re-alleges and incorporates by

reference her belief that Dr. Broadwell violated ERISA by committing the same errors and omissions in his review as did Dr. Caruso.

31.     UNUM and Dr. Council's conflicts of interest are evident in her March 23, 2009 medical review report.  Dr. Council did not examine Plaintiff and her opinion, from a general medical point of view, Plaintiff was not impaired under the relevant definition of disability effective January 28, 2009, was based entirely on a selective review of the evidence which supported Plaintiff's claim.   Plaintiff re-alleges and incorporates by reference her belief that Dr. Council violated ERISA by committing the same errors and omissions in her review as did Dr. Caruso and Dr. Broadwell.

32.     As part of its review of Plaintiff's claim for long term benefits, UNUM obtained a vocational assessment of Plaintiff prepared by Marian Pearman, MS, CRC, CCM, Senior Vocational Rehabilitation Consultant employed by UNUM.   Plaintiff incorporates by reference her discussion of the conflict of interest and incentive to protect her own consulting relationship as addressed with Dr. Caruso, Dr. Broadwell and Dr. Council.

33.     UNUM and Ms. Pearman's conflict of interest are evident in the March 26, 2009 vocational assessment report authored by Ms. Pearman.  Ms. Pearman did not examine Plaintiff and her opinion that Plaintiff could perform several jobs on a full time basis given the limitations noted by Plaintiff's treating medical physicians was based entirely on a selective review of the evidence which supported Plaintiff's claim. Plaintiff re-alleges and incorporates by reference her belief that Ms. Pearman violated ERISA by committing the same errors and omissions in her review as did Dr. Caruso, Dr. Broadwell and Dr. Council.

34.     Upon information and belief, as part of its evaluation of Plaintiff's serious medical conditions, UNUM retained an investigator to conduct surveillance of Plaintiff's

1    activities on December 8-9, 2009.  The video fails to offer any evidence to suggest Plaintiff

2    would be able to engage in any gainful employment.

3         35.    In a letter dated April 2, 2009, without any evidence Plaintiff's medical

4    condition had improved or she was able to engage in any gainful occupation for which she

5    is reasonably fitted given her serious medical conditions, UNUM notified Plaintiff it was

6    denying her claim for long term disability benefits after erroneously concluding Plaintiff

7    had failed to provide sufficient evidence to support the severity of her serious medical

8    conditions.  UNUM's denial letter confirms it failed to provide a full and fair review

9    pursuant to ERISA because it completely failed to reference, consider and/or selectively

10   reviewed most if not all of Plaintiff's evidence submitted.

11        36.    UNUM's determination was erroneous and unlawful because Plaintiff's

12   medical condition had deteriorated from the time it originally evaluated and approved her

13   claim for short and long term disability benefits and the medical evidence demonstrated

14   Plaintiff's disabling medical conditions were not limited to those set forth in the relevant

15   policy's disability benefit limitation provision.  In denying Plaintiff's claim, UNUM also

16   failed to fulfill its fiduciary duty to Plaintiff by erroneously and unlawfully de-emphasizing

17   the opinions of her treating physicians who confirmed Plaintiff's medical condition(s) had

18   not improved.  UNUM's review also violated ERISA's requirement Plaintiff be provided

19   with a full and fair review as required by 29 C.F.R § 2560.503-1, because her claim was

20   based on *numerous* medical conditions and in determining whether Plaintiff met the

21   definition of disability, UNUM did not consider the combined effect or impact of

22   Plaintiff's medical conditions and/or medications with regard to whether she met the

23   definition of disability in the relevant policy.  UNUM's decision was also arbitrary because

24   it did not fully consider whether some or all of Plaintiff's disabling medical conditions were

25   not subject to a limitation of benefits in the relevant policy.

26

37.     Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the April 2, 2009 denial of her claim for long term disability benefits in a letter dated September 3, 2009.   In support of her appeal, Plaintiff submitted additional medical information and supporting affidavits to UNUM demonstrating her total disability as defined in the relevant UNUM policy.

38.     In support of her appeal, Plaintiff submitted to UNUM a Functional Capacity Evaluation report dated June 24, 2009 which, based on a reasonable degree of medical certainty, concluded that Plaintiff "would not be able to perform **sedentary work** consistently on a regular, full-time basis."  (original emphasis).  Plaintiff also submitted a July 29, 2009 narrative letter from one of her treating physicians which concluded, based on objective medical findings, Plaintiff would probably "never be able to return to any form of gainful employment." This physician also agreed with the findings of the Functional Capacity Evaluation finding Plaintiff "would be unable to perform a job description, at the sedentary work level."

39.     In further support of her appeal, Plaintiff submitted to UNUM an October 19, 2009 narrative letter from another treating physician which completely agreed with the Functional Capacity Evaluation.  This physician also stated that objective medical findings confirm Plaintiff's serious medical conditions.   The physician concluded that Plaintiff is unable to work in any occupation and it is "likely" she never will return to gainful employment.  Plaintiff also submitted a November 3, 2009 Vocational Evaluation report, finding she "is unable to perform any type of work in the competitive labor market."

40.     In further support of her appeal, Plaintiff submitted to UNUM an October 29, 2009 Affidavit from her husband stating she is "unable to work at the present time" and has been since August 2006.  Plaintiff also submitted to UNUM an October 29, 2009 Affidavit

from her parents stating that she is unable to work and no reasonable accommodations could be made to enable her to work consistently even at a part-time job.

41.     UNUM notified Plaintiff in a letter dated December 10, 2009 it was upholding its decision to deny her long term disability benefits after erroneously finding there was "no medically supported restrictions or limitations from a physical perspective as of April 02, 2009."

42.     UNUM's denial failed to provide Plaintiff with a full and fair review by failing to properly investigate her claim in violation of ERISA, specifically 29 C.F.R. § 2560.503-1(h) because it again completely failed to reference, consider and/or selectively reviewed most if not all of her evidence which adequately documented objective medical evidence of her serious medical conditions and the fact she continued to meet the relevant definition of disability.  UNUM denied Plaintiff a lawful, full and fair review pursuant to ERISA for various reasons including but not limited to, failing to consider all evidence submitted by Plaintiff or de-emphasizing the medical evidence supporting Plaintiff's disability, failing to consider all the limitations set forth in her medical evidence, failing to obtain a peer review evaluation from a disinterested, qualified physician, failing to obtain any independent medical evaluation of Plaintiff's serious medical conditions, failing to evaluate the combination of all of Plaintiff's serious medical conditions and failing to consider the combined effect of Plaintiff's medications.   The evidence submitted by Plaintiff to UNUM is sufficient for this Court to find that she met the "any occupation" definitions of disability in the relevant UNUM policy and that her claim was not subject to any policy limitation on the payment of benefits.

43.     UNUM has been criticized by federal courts for the manner in which it selectively reviews claims and terminates them when it is in the company's best interest. The $26,394,765.39 dollar verdict and this Court's findings of fact as rendered in *Merrick v.*

*Paul Revere Life Ins*., 594 F. Supp. 2d 1168 (D. Nev. 2008) *(*Attached hereto as Exhibit "A" is a copy of the *Merrick* decision), provides ample evidence of UNUM's conflicts of interest and the self-serving manner in which it manages, evaluates and denies disability claims.

44.   Plaintiff believes discovery is necessary in this litigation for the Court to fully understand UNUM's and any individual's conflict of interest who was involved in the review of her claim and how those conflicts either alone or in combination resulted in the denial of her claim.[2]

45.   UNUM has notified Plaintiff she has exhausted her administrative appeals.

46.   Plaintiff believes a reason UNUM terminated her claim for long term disability benefits is due to its aforementioned structural financial conflict of interest in that it was the sole decision maker with regard to whether Plaintiff was disabled pursuant to the policy and the payor of benefits if it approved Plaintiff's claim.

47.   In evaluating Plaintiff's claim on appeal, UNUM had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in her best interests and other participants" which it failed to do.[3]

48.   Plaintiff believes the reason UNUM provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its conflict of interest and this conflict is the reason her disability claim was denied.

---

[2]  Paul Revere Life Insurance Company is a subsidiary of UnumProvident Corporation.
[3]  It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

49.    Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of UNUM and any individual who reviewed her claim and the Court may properly weigh and consider evidence regarding the nature, extent and effect of *any* conflict of interest which may have impacted or influenced UNUM's decision to deny her claim.

50.    With regard to whether Plaintiff meets the definition of disability set forth in the policy, the Court should review the evidence in Plaintiff's claim *de novo* because the unlawful violations of ERISA committed by UNUM as referenced herein are flagrant.

51.    As a direct result of UNUM's decision to deny Plaintiff's disability claim she has been injured and suffered damages in the form of lost disability benefits in addition to other potential employee benefits she may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled.

52.    Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

53.    Plaintiff is entitled to prejudgment interest at the rate of 10% per annum pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for the losses she incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A.    For an Order requiring Defendants to pay Plaintiff disability benefits as a result of being found disabled pursuant to the relevant policy's "any occupation" definition of disability from the date she was first denied these benefits through the date of judgment and prejudgment interest on those benefits as well as any other employee benefits she may be entitled to from the Plan and/or Company as a result of being found disabled;

B.    For an Order that any one or all of Plaintiff's disabling medical condition(s) are not subject to the relevant policy's "self reported" limitation for the payment of benefits;

-13-

1    C.    For an Order directing Defendants to continue paying Plaintiff the

2  aforementioned benefits until such time as she meets the Plan or policy conditions for

3  termination of benefits;

4    D.    For attorney's fees and costs incurred as a result of prosecuting this suit

5  pursuant to 29 U.S.C. §1132(g); and

6    E.    For such other and further relief as the Court deems just and proper.

7                     DATED this 25th day of May, 2010.

8                     SCOTT E. DAVIS. P.C.

9

10                    By:   /s/ Scott E. Davis
                            Scott E. Davis
11                          Attorney for Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26